UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:21-CV-104

| | |
|---|---|
| **WILLIAM BRANDON WILKERSON**<br><br>**Plaintiff**<br><br>v.<br><br>**SEQUIUM ASSET SOLUTIONS, LLC.,**<br>**EQUIFAX INFORMATION SERVICES,**<br>**LLC, and TRANSUNION, LLC**<br><br>**Defendant** | **COMPLAINT**<br><br>**WITH DEMAND FOR TRIAL BY JURY** |

**NOW COMES** Plaintiff, William Brandon Wilkerson, by and through Counsel, and pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681 *et seq.*, and N. C. Gen. Stat. § 75-50, *et seq.*, respectfully pleads to this Court the following:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1681p, 28 U.S.C. § 1331 and 28 U.S.C. 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

3. This case is brought within two years of the alleged FCRA violations in compliance with the statute of limitations at 15 U.S.C. §1681p.

4. This case is brought within four years of the alleged violations of North Carolina Law in compliance with the statute of limitations at N.C. Gen. Stat. § 75-16.2.

## PARTIES

5. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

6. William Brandon Wilkerson ("Plaintiff") is an individual and citizen of the State of North Carolina who currently resides in Mecklenburg County, North Carolina.

7. At all times relevant to this action the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8. At all times relevant to this action the Plaintiff was a "consumer" as defined by N.C. Gen. Stat. § 58-70-90(2).

9. Defendant, Sequium Asset Solutions, LLC. ("Sequium"), is a "person" as defined in 15 U.S.C. § 1681a(b).

10. Sequium is a business entity which regularly conducts business nationally and has its corporate office at 1130 Northchase Parkway, Suite 150 Marietta, GA 30067.

11. Sequium can be reached for service through its registered agent, Registered Agent Solutions at 176 Mine Lake Ct, Suite 100, Raleigh, North Carolina 27615.

12. At all times relevant to this action Sequium was engaged in commerce in North Carolina.

13. At all times relevant to this action Sequium was a "collection agency" as defined by N.C. Gen. Stat. § 58-70-90(1).

14. The alleged debt at issue arose out of a transaction that was primarily for personal, family or household purposes.

15. At all times relevant to this action the alleged debt in this matter was a "debt" alleged to be owed as defined by N.C. Gen. Stat. §58-70-90(3).

16. Equifax Information Services, LLC (Equifax), is a Georgia limited liability company doing business throughout the country and in the state of North Carolina.

17. Equifax is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

18. Equifax can be reached for service through its registered agent, Corporation Service Company, at 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608.

19. At all times relevant to this action Equifax was engaged in commerce in North Carolina by engaging in, *inter alia*, reporting of consumer credit information.

20. At all times relevant to this action Equifax was a "person" as that term defined in 15 U.S.C. § 1681a(b).

21. TransUnion, LLC ("TransUnion"), is a Delaware limited liability company doing business throughout the country and in the state of North Carolina.

22. TransUnion is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

23. TransUnion can be reached for service through its registered agent, The Prentice-Hall Corporation System, Inc., 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina, 27608.

24. At all times relevant to this action TransUnion was engaged in commerce in North Carolina by engaging in, *inter alia*, reporting of consumer credit information.

25. At all times relevant to this action TransUnion was a "person" as that term defined in 15 U.S.C. § 1681a(b).

## FACTUAL ALLEGATIONS

26. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

27. In the early fall of 2017, the Plaintiff transferred his DirectTV services from his previous home to his newly purchased home.

28. Because his satellite dish did not have a line of site, DirectTV transferred service to AT&T Uverse, as they were related companies.

29. The AT&T representative told the Plaintiff that the DirectTV order was cancelled and that he did not need to return the DirectTV equipment.

30. The Plaintiff was not told that a new account number was created.

31. Sometime in late spring of 2018, the Plaintiff received a bill from DirectTV.

32. The invoice charged the Plaintiff for service from DirectTV in November and December of 2017 as well as the DirectTV equipment.

33. That bill was approximately $500.

34. The Plaintiff contacted DirectTV by phone and found that he had overlapping accounts from DirectTV and Uverse such that he was being charged twice for the same service, or charged by DirectTV for service that he was not using.

35. DirectTV asked the Plaintiff to return the equipment and the accounts would be corrected.

36. The Plaintiff returned the DirectTV equipment and he thought the accounts were corrected.

37. In November and December of 2018, the Plaintiff started the process of purchasing a new home.

38. On December 10, 2018, Plaintiff contacted Brandon Wolf with Southern Trust Mortgage, LLC and applied for pre-approval of a mortgage.

39. During the pre-approval process, Mr. Wolf pulled the Plaintiff's credit report and the Plaintiff discovered that Sequium was reporting a collection account on his credit report.

40. The trade line reported that the Plaintiff was in collections for $223.

41. This was incorrect.

42. The Plaintiff should not have been reported as in collections by Sequium.

43. Sequium reported this account as being in collections on the Plaintiff's Equifax and TransUnion credit reports.

44. The Plaintiff contacted DirectTV and Sequium on multiple occasions no one was able to help him resolve the issue.

45. Sequium recommended that the Plaintiff contact DirectTV about the disputed trade lines.

46. December 11, 2018, Plaintiff received the following information from Mortgage Credit Officer Michael McNamara, VP of Southern Trust Mortgage, LLC., by way of email about improving the Plaintiff's credit score. The email stated that the Plaintiff needed to do the following to be pre-approved for the loan:

> Contact Caliber Home Loans about the late showing from 2/18 and request a "One Time Courtesy Removal" and get a letter from them indicating removal of the late. Explain to them about the auto draft issue.
> Clear up the Sequium Asset #28343302 $223 collection for Direct TV and request a paid and REMOVAL letter. (877) 362-8766
> Pay down the Chase $13,296 to around $7,000
> Pay down the Barclays $11,724 to around $6,000"

47. January 2, 2019, Brandon Wolf notified the Plaintiff by email that he needed to improve his credit score by a couple of points to be able to close the loan he sought. That email stated:

> Just paying the two accounts down will only get us a couple of points. If he were to pay them down and get a paid and REMOVAL letter on the Sequium we should be over 700 even with the Caliber late or vise versa. It appears we can really overlook one or the other when it comes to the late payment or collection. Since the sequium is through Directv, it may be a better thought to call Directv directly and see if they will release the collection. I have seen at times that if the collection company wont help, the original collector will… they will then be able to tell Seqium to take it off. Unfortunately, no special tricks with Caliber. Just need to get the right person on the phone.

48. On January 16, 2019, the Plaintiff hired Creditrepair.COM, Inc. (CRC) to assist in correcting the errors of the Defendants so that he could be pre-approved for a mortgage.

49. CRC disputed the Plaintiff's trade lines with the Defendants several times over the next year.

50. The Plaintiff followed the mortgage lender's instructions and made large payments on his credit cards, as follows:

a) January 3, 2019: $4,180.33 payment on Chase Credit Card
b) January 19, 2019: $4,844.17 payment on Chase Credit Card
c) January 19, 2019: $5,458.69 payment to Barclays Credit Card

51. January 22, 2019, the Plaintiff was informed by CRC that the Sequium Collection account had been removed from his Experian credit report.

52. January 22, 2019, the Plaintiff confirmed to Brandon Wolf and Michael McNamara that he had paid down balances of credit card balances as instructed.

53. Mr. McNamara submitted the record of the payments to the CRAs to update the Plaintiff's credit scores with the CRAs to move the loan process along.

54. On February 12, 2019, that Plaintiff was told that paying down credit cards helped raise his credit score and that he could move into final approval stages.

55. With the hope of improving his credit score for the purchase of a new home, the Plaintiff reluctantly paid the collection to Sequium.

56. This had a small positive effect at the time and the Plaintiff was able to be approved for the purchase of the new home.

57. However, the Plaintiff was locked into a significantly higher interest rate than his previous rate.

58. The prior mortgage was at a 3.875% interest rate and the new rate was 5.95%.

59. March 15, 2019, the Plaintiff closed his new home.

60. The Plaintiff's interest rate on his new home is 5.95%.

61. If the collection account were not on his credit report the Plaintiff's mortgage payment would have been over $500 per month lower than it is now.

62. October 21, 2019, the Plaintiff contacted Mr. Wolf about refinancing the mortgage because of the high monthly payments.

63. October 22, 2019, the Plaintiff found https://resolutions.directv.com/ and completed the dispute form on that web page.

64. Within 1 week of submitting this form, DirectTV refunded the bill amount that had been sent to collections.

65. DirectTV did this because the Plaintiff should never have been charged for that amount.

66. As of the filing of this action the Plaintiff has a $200 credit with DirectTV that he has no access too.

67. Based on this refund, the Plaintiff requested a letter from DirectTV stating this collection should not be reported so that he could use the letter as evidence to correct his credit report.

68. Once the Plaintiff received the credit from DirectTV, the Plaintiff contacted DirectTV by phone to learn the quickest way to resolve the credit reporting issue as he was attempting to refinance the home because of the high payment.

69. DirectTV told the Plaintiff to mail a letter to its legal department for and the legal department would respond in writing within 10 days.

70. That response never came.

71. Mr. Wolf communicated with the Plaintiff that for him to be able to refinance, he would need to have the Sequium collection removed from his credit report.

72. In late October/Early November 2019 the Plaintiff filed a dispute with TransUnion.

73. The reinvestigation undertaken by Equifax was unreasonable.

74. From this dispute the Plaintiff received Confirmation #314549344.

75. The TransUnion response, created on November 22, 2019, states that the information he disputed was verified as accurate.

76. The trade line still showed the account as a collections account.

77. This was incorrect because the Plaintiff should never have been in collections.

78. TransUnion should have corrected the Sequium tradeline or refused to publish it.

79. In May 2020, the Plaintiff disputed the Sequium Account #28343302 with Equifax.

80. The Plaintiff attached to this dispute the refund letter from DirectTV, among other documents.

81. Equifax should have reasonably inferred from this refund statement that the tradeline was inaccurate.

82. The reinvestigation undertaken by Equifax was unreasonable.

83. From this dispute the Plaintiff received Confirmation #014206150.

84. The Equifax response, created on June 11, 2020, states that the information he disputed was verified as accurate.

85. The trade line still showed the account as a collections account.

86. This was incorrect because the Plaintiff should never have been in collections.

87. Equifax should have corrected the Sequium tradeline or refused to publish it.

88. In May, 2020, the Plaintiff filed a dispute with TransUnion.

89. The Plaintiff attached to this dispute the refund letter from DirectTV, among other documents.

90. Equifax should have reasonably inferred from this refund statement that the tradeline was inaccurate.

91. The reinvestigation undertaken by Equifax was unreasonable.

92. From this dispute the Plaintiff received Confirmation #314549344.

93. The TransUnion response, created on June 17, 2020, states that the information he disputed was verified as accurate.

94. The trade line still showed the account as a collections account.

95. This was incorrect because the Plaintiff should never have been in collections.

96. TransUnion should have corrected the Sequium tradeline or refused to publish it.

97. The Plaintiff filed disputes with TransUnion on the following dates, all to no avail: August 27, 2019, July 23, 2019, May 28, 2019, April 16, 2019, January 15, 2019.

98. The Plaintiff filed disputes with Sequium on the following dates, all to no avail: August 20, 2019, June 18, 2019, April 16, 2019, February 19, 2019, January 15, 2019, and January 14, 2019.

99. As a result of Defendants' conduct, Plaintiff has suffered emotional and mental pain and anguish, and he will continue to suffer the same for an indefinite time in the future, all to his detriment and loss.

100. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of financial and dignitary harm (for example, decreased credit limit and embarrassment in front of his lender) arising from the injury to credit rating and reputation, and he will continue to suffer the same for an indefinite time in the future, all to his detriment and loss.

101. Plaintiff has suffered a decreased credit score as a result of the misreported trade lines and multiple inquiries appearing on his credit file.

102. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

103. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

104. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

105. Sequium was properly noticed by the Plaintiff that the reported collection action as described herein should not have been reported on the Plaintiff's credit report as it was reporting to the Credit Reporting Agencies (CRAs).

106. The CRAs noticed Sequium of the same inaccuracies on the Plaintiffs' credit reports.

107. Sequium had in its records all of the information relevant to the Plaintiffs' account and chose to report the Plaintiffs as inn colections when Sequium knew that the Plaintiffs was not in collections.

108. Sequium knows that the information it is reporting about the Plaintiffs is inaccurate.

109. Plaintiff contacted Equifax, TransUnion and Experian repeatedly to dispute the accuracy of the information being reported about them.

110. Upon information and belief, pursuant to 15 U.S.C. § 1681i(a)(2), Sequium received notification of this dispute from Equifax, TransUnion and Experian.

111. Sequium has repeatedly failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line, in violation of 15 U.S.C. § 1681s-2(b)(1).

112. Notwithstanding Sequium's actual knowledge that Plaintiff was not in collections, Sequium's failure to conduct a reasonable investigation of the accuracy of its reporting of this adverse information shows an intentional and reckless disregard for Plaintiff's rights under the FCRA.

113. In addition to the violation as described above, Sequium failed to satisfy its duty under 15 U.S.C. § 1681s-2(b) of updating incomplete or inaccurate information it had previously

reported to CRAs upon receipt of each notice from Equifax, TransUnion and Experian that Plaintiff disputed the accuracy of the previously reported information.

114. Any collection reported on the Plaintiff's account was due to Sequium's conduct and purposely inaccurate record keeping and not due to financial irresponsibility on behalf of the Plaintiff.

115. The information that Sequium had furnished to the CRAs to be published was false, and Sequium knew it was false.

116. This information showed the Plaintiff to be an irresponsible consumer when he is not.

117. As a direct and proximate result of Sequium's willful and/or negligent refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage as described herein, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

118. Sequium's indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and reckless, willful and wanton misconduct, calling for an assessment of punitive damages against Sequium, pursuant to 15 U.S.C. § 1681n(a)(2).

119. Equifax willfully and recklessly or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of 15 U.S.C. §1681e(b).

120. Equifax knew, or has sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it is circulated was extremely inaccurate and damaging to Plaintiff.

121. Despite actual and implied knowledge that it was publishing inaccurate accounts on the Plaintiff's credit reports, Equifax readily sold false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

122. Equifax published the same incorrect information multiple times.

123. Plaintiff was unable to obtain certain financing, and then obtained financing at a higher interest rate than he would have otherwise hadd to pay, as described herein, because of the grossly inaccurate credit file maintained by Equifax.

124. Plaintiff has suffered out-of-pocket loss as a result of Equifax's willful or reckless and negligent violations of the FCRA.

125. Plaintiff has not been free to take advantage of various credit opportunities available to other consumers because of Equifax's failure to report only accurate information about him.

126. As a direct and proximate result of Equifax's actions as alleged herein, the Plaintiff has suffered loss and damage as listed above as well as damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

127. Upon information and belief, Equifax has been sued on multiple occasions over recent years for actions similar to the actions listed in this complaint.

128. Upon information and belief, Equifax has exhibited a pattern of refusing to conform its practices the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

129. Equifax's pattern of refusal to follow conduct its business in accordance with the FCRA reveals a conscious disregard of the rights of Plaintiff.

130. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of consumers. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

131. TransUnion willfully and recklessly or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of 15 U.S.C. §1681e(b).

132. TransUnion knew, or has sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it is circulated was extremely inaccurate and damaging to Plaintiff.

133. Despite actual and implied knowledge that it was publishing inaccurate accounts on the Plaintiff's credit reports, TransUnion readily sold false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

134. TransUnion published the same incorrect information multiple times.

135. Plaintiff was unable to obtain certain financing, and then obtained financing at a higher interest rate than he would have otherwise had to pay, as described herein, because of the grossly inaccurate credit file maintained by Equifax.

136. Plaintiff has suffered out-of-pocket loss as a result of TransUnion's willful or reckless and negligent violations of the FCRA.

137. Plaintiff has not been free to take advantage of various credit opportunities available to other consumers because of TransUnion's failure to report only accurate information about him.

138. As a direct and proximate result of TransUnion's actions as alleged herein, the Plaintiff has suffered loss and damage as listed above as well as damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

139. Upon information and belief, TransUnion has been sued on multiple occasions over recent years for actions similar to the actions listed in this complaint.

140. Upon information and belief, TransUnion has exhibited a pattern of refusing to conform its practices the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

141. TransUnion's pattern of refusal to follow conduct its business in accordance with the FCRA reveals a conscious disregard of the rights of Plaintiff.

142. TransUnion's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of consumers. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

## **VIOLATIONS OF N. C. Gen. Stat. § 58-70-90,** *et seq***.**

143. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

144. At all times relevant to the allegations in this complaint, Sequium collected delinquent debt for DirectTV.

145. Sequium knew that the Plaintiff did not owe the debt it attempted to collect for DirectTV.

146. Sequium made the false accusation to another person, including a credit reporting agency, that the Plaintiff had not paid or refused to pay a just debt.

147. This behavior constitutes a specific violation of N. C. Gen. Stat. § 58-70-95(3).

148. Sequium falsely represented the character, extent, or amount of a debt against the Plaintiff.

149. This behavior constitutes a specific violation of N. C. Gen. Stat. § 58-70-110(4).

150. These acts caused damages as described herein.

151. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages of the actual damages plus civil penalties pursuant to N.C. Gen. Stat. § 58-70-90(b) as well as attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.1.

## **DEMAND FOR JURY TRIAL**

152. Plaintiff exercises his right to a trial by jury on all issues so triable.

**WHEREFORE,** the Plaintiff respectfully requests the following relief from the Court:

1. Compensatory damages in an amount to be determined at trial that will fairly and reasonably compensate him for the emotional distress, aggravation, annoyance, humiliation, and financial hardship suffered as a result of the Defendants' unlawful acts;

2. Punitive damages in an amount to be determined at trial for the willful, wanton and/or reckless disregard for his legal rights;

3. Actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o;

4. Statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n;

5. Actual damages to be determined at trial and statutory damages of $4,000 per violation as allowed pursuant to N. C. Gen. Stat. §75-50, et seq.;

6. Costs and reasonable attorney's fees pursuant to N.C. Gen. Stat. §§ 75-16.1 and 75-50, *et seq*.; and

7. For such further and relief that this Court may deem just, equitable and proper.

**TODAY** is March 11, 2021.

                **COLLUM & PERRY**
By:   */s/ M. Shane Perry*
       M. Shane Perry
       NC Bar Number: 35498
       109 W. Statesville Ave.,
       Mooresville, NC 28115
       Telephone: 704-663-4187
       Facsimile: 704-663-4178
       shane@collumperry.com
       *Attorney for Plaintiffs*